Clifford R. MONTIERO

v.

SILVER LAKE I, L.P. et al.

No. 2001–514–APPEAL.

Supreme Court of Rhode Island.

Jan. 15, 2003.

Michael J. Farley, East Providence, for Plaintiff.

James D'Ambra, Providence, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Clifford R. Montiero (plaintiff), appeals from a summary judgment entered in favor of the defendants, Silver Lake I, L.P., George W. Jensen and Robert J. Litter (collectively, defendants or Silver Lake).[1] This case came before the Supreme Court for oral argument on December 4, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. Because we agree that there are no material facts in dispute and that Silver Lake is entitled to judgment as a matter of law, we affirm the judgment. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

Silver Lake is the owner of an apartment building at 91–93 Ralph Street, Providence, Rhode Island. In 1995, James Trussell, Jr. (Trussell) voluntarily moved out of the premises after defendants instituted eviction proceedings against him. In September 1996, Trussell's grandmother, Ida Conroy, lived in an apartment on the first floor of the premises.

1. George W. Jensen and Robert J. Litter are partners in Silver Lake I, L.P.

On several occasions, plaintiff went to the building in his capacity as a deputy sheriff for Providence County to serve process on Trussell. During his visits to the premises, plaintiff made a number of observations in the backyard, including dog droppings and a chain connected to a stake in the ground. Based on his observation, plaintiff believed that there was a dog on the premises.

On September 12, 1996, plaintiff again went to the premises to serve process on Trussell. After knocking on the front door, plaintiff noticed a sign that directed visitors to use the back door of the house. The plaintiff then went around the house, where he came upon a four-foot high wooden fence surrounding the backyard. Behind the fence and inside the yard was a barking brown dog that was attached to a chain. The plaintiff noticed that the back door of the building was open and waited to see whether Trussell would respond to the barking dog. Trussell did not respond, however, so plaintiff opened the gate and walked into the yard. Suddenly, a pit bull terrier ran out of the open back door and bit plaintiff's left hand. The plaintiff struck the pit bull with his keys and jumped the fence to get away. Thereafter, Trussell came out of the house and admitted ownership of the pit bull and said that he lived at the premises.[2] The defendants deny knowledge that Trussell or the pit bull lived there. As a result of the incident, plaintiff says that he injured his left thumb, right knee, right foot and lower back.

In May 1999, plaintiff filed a civil action alleging negligence and strict liability under G.L.1956 chapter 13.1 of title 4 and G.L.1956 § 4–13–17.[3] The defendants answered the complaint and the parties conducted discovery. Thereafter, defendants moved for summary judgment, arguing that they did not know that the dog was on the premises and, further, that they did not know about the dog's propensity to bite. The motion justice agreed with defendants and granted summary judgment. The plaintiff timely appealed.

## II

### Summary Judgment

"This Court reviews the grant of summary judgment on a *de novo* basis, applying the same standards as the trial court." *Sobanski v. Donahue,* 792 A.2d 57, 59 (R.I.2002). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Delta Airlines, Inc. v. Neary,* 785 A.2d 1123, 1126 (R.I.2001). The parties opposing summary judgment may not "rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998).

First, plaintiff contends that defendants should be civilly liable under § 4–

---

**2.** Although he was named on the complaint, Trussell has not been served with process because he could not be located and, therefore, is not a party to the case.

**3.** The plaintiff's complaint did not specifically identify G.L.1956 § 4–13–17, but he did im-

plicitly refer to it by seeking to impose liability on defendants for "harboring" the pit bull. Further, both parties referred to § 4–13–17 in their respective motions for and against summary judgment.

13–17 as harborers of the dog that attacked him. Under § 4–13–17:

"[a]ny person keeping or harboring in his or her house or on his or her lands any dog, or knowingly suffering this to be done by any other person, shall be liable for all damages done by the dog in the same manner as if he or she were the owner."

The first step in imposing liability under this section is to establish that the keeper or harborer knew of the dog's presence on the premises. *See Lindsay v. Crohan*, 508 A.2d 674, 676 (R.I.1986). Second, a plaintiff must establish the requisite level of culpability on the part of the keeper or harborer. *See id.* at 675–76. If damages are suffered within the owner's enclosed space, the common law dictates that the plaintiff must prove that the defendant knew about the dog's vicious propensities. *See id.* This knowledge requirement is commonly referred to as the "one-bite rule." *See, e.g., Harris v. Walker*, 119 Ill.2d 542, 116 Ill.Dec. 702, 519 N.E.2d 917, 918 (1988). Conversely, an owner, and consequently its keeper or harborer under § 4–13–17, is strictly liable if the dog causes damage to "any person while traveling the highway or out of the enclosure of the owner or keeper of that dog * * *." Section 4–13–16. An enclosure under § 4–13–16 is a fence, physical obstruction or any other condition that gives reasonable notice to third parties that the area is private. *See Butti v. Rossi*, 617 A.2d 881, 882 (R.I.1992).

■ It is evident from the record before us that plaintiff has failed to demonstrate the existence of disputed material facts that would preclude judgment in defendants' favor. At the hearing on the motion for summary judgment, plaintiff's attorney said that Litter admitted going to the premises twice per month to mow the lawn in the area where the attack occurred. Arguably, Litter's presence at the premises, coupled with the condition of the yard as observed by plaintiff could put defendants on notice of a dog's presence on the property. However, there is no evidence that those observations would alert defendants that this particular dog was present at the premises. As plaintiff described, there was another dog in the yard where the attack occurred, which could have left the telltale signs of canine inhabitants. Further, plaintiff has not provided us with a transcription of Litter's deposition in which he allegedly made the admission. Rather, the only evidence of Litter's statements came from plaintiff's attorney. It is elementary that such statements from an attorney are not appropriate evidence to establish a genuine issue of material fact. *See Palmisciano v. Burrillville Racing Association*, 603 A.2d 317, 320 (R.I.1992).

■ Even if the evidence were sufficient to impute knowledge of the pit bull's presence on the premises, plaintiff utterly has failed to establish the requisite level of culpability on defendants' part. It is undisputed that the attack here took place in the backyard of the building owned by Silver Lake. The yard was bounded by a four-foot-high fence. Thus, the attack took place within defendants' enclosed space, and plaintiff was obliged under the common law to put forth some evidence of defendants' knowledge of the dog's dangerous propensities.

Here, there is no evidence contained in the affidavits, responses to interrogatories or other admissible evidence that tends to establish defendants' knowledge of the dog's viciousness. The plaintiff failed to provide any specific facts that would "reasonably suggest to [defendants] the danger of permitting the animal to remain at large." *Lindsay*, 508 A.2d at 676. The plaintiff, however, argues that defendants

should have known of the dog's viciousness because it was a pit bull—a dog "with a well-deserved reputation for viciousness." We refuse to follow plaintiff's logic. The creation of a species-specific standard of care is a policy matter that is better left to the legislature. Moreover, there is no evidence that defendants knew the dog was a pit bull. Thus, defendants are entitled to protection under the one-bite rule and the motion justice properly entered summary judgment in their favor on plaintiff's common law negligence claim.

Alternatively, the plaintiff attempts to establish liability pursuant to § 4–13.1–7, which provides a cause of action for any person who suffers an unprovoked attack, assault, bite or other injury from a dog that has been declared vicious under § 4–13.1–11. Section 4–13.1–11 provides that a dog may be declared vicious after a hearing. There is no evidence that the pit bull in this case was declared vicious under § 4–13.1–11, and accordingly, the damages provision in § 4–13.1–7 is inapplicable.

## Conclusion

For the reasons set out above, the plaintiff's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case may be returned to the Superior Court.

Justice Lederberg participated in all proceedings but deceased prior to the filing of this opinion.