Shayna L. FERRARA, by her guardian and next best friend, COMMON-WEALTH OF MASSACHUSETTS DEPARTMENT OF SOCIAL SER-VICES

v.

Michael MARRA.

No. 2001–560–Appeal.

Supreme Court of Rhode Island.

June 2, 2003.

Robert K. Harrington, Fall River, MA, for Plaintiff.

Kevin J. Holley, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS and GOLDBERG, JJ., and SHEA, J. (Ret.).

## OPINION

PER CURIAM.

This dog-bite case came before the Court for oral argument on March 10, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time.

The plaintiff, Shayna L. Ferrara, by her guardian and next best friend, the Commonwealth of Massachusetts Department of Social Services (plaintiff), appeals from the entry of summary judgment in favor of defendant landlord, Michael Marra (defendant). We reverse and remand the case for a trial on the merits.

On May 13, 1995, eleven-year-old Shayna was attacked by three pitbull terriers while visiting an apartment that defendant owned on Miller Avenue in Providence. Two of the pitbull terriers were puppies, and it is undisputed that all of them belonged to defendant's tenant, Kathleen Walker (Kathleen). Kathleen apparently

occupied the subsidized apartment with her boyfriend, Carl Hartfield a.k.a. Carl Walker (Carl).[1]

Shayna allegedly suffered extensive and permanent injuries from the dog bite attack and sued for negligence by and through her mother, Mary Ferrara.[2] She asserted that defendant landlord was strictly liable for her injuries because he knew that pitbull terriers were being kept or harbored on his property and that, by their very nature, pitbull terriers are animals that have dangerous and vicious propensities. She additionally asserted that defendant landlord was liable to her for her injuries because he allowed his tenant to keep or harbor the animals despite knowing that at least one of the dogs in question had dangerous and vicious propensities.

■ At a hearing on defendant's second motion for summary judgment,[3] defense counsel successfully argued that although defendant was aware of the presence of the pitbull terriers on his property, he had no knowledge of their dangerous and vicious propensities. After a hearing, the trial justice granted defendant's motion, concluding that there was no evidence that defendant was aware that the dogs had vicious propensities. We disagree.

■ "This Court reviews a grant of summary judgment on a *de novo* basis." *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 291 (R.I.2002) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457

(R.I.1996)). "Accordingly, if our review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996)). "The nonmoving party, however, must present evidence that a disputed material fact exists and cannot prevail by simply relying on allegations or denials in the pleadings." *Id.* (citing *Heflin v. Koszela*, 774 A.2d 25, 29 (R.I.2001)).

On appeal, plaintiff asserts that the trial justice erred in granting defendant's motion for summary judgment because there exist genuine issues of material fact from which a jury could infer that defendant had knowledge of the vicious propensities of at least one of the dogs. Because of that knowledge and the fact that he allowed Walker to harbor the dogs, plaintiff maintains civil liability properly could be imposed upon defendant pursuant to G.L. 1956 § 4–13–17.

To support her argument, she observes that defendant knew that pitbull terriers lived in the apartment from his weekly visits to collect the rent. She also maintains that one of the dogs was vicious as a matter of law because it previously had attacked another child. A three-month old police report indicated that a fourteen-year-old girl was attacked and bitten by a

---

1. The plaintiff alleges in her complaint that the dogs belonged to "Caroline" Walker. This appears to have been a typographical error and does not affect our analysis.

2. The Department of Social Services of the Commonwealth of Massachusetts since has been substituted as Shayna's guardian and next best friend.

3. The defendant's first motion for summary judgment was denied because of the sparsity of the record, particularly because of defendant's failure to provide deposition testimony. The trial justice was not precluded from hearing the second motion on an expanded record. *See Fleet Construction Co. v. Aetna Life & Casualty, Co.*, 746 A.2d 1247, 1251 (R.I. 2000).

pitbull puppy "while she was at a friend's house, Carl Hartfield (from Miller Ave.)." Kathleen Walker's boyfriend was Carl Hartfield, and they lived in defendant's apartment on Miller Ave. The plaintiff asserts that a reasonable jury could conclude from that evidence that defendant was aware of the previous dog-bite attack. We agree.

■ Under the common law a person could recover damages from a dog bite only if that person could prove that the owner was aware of the dog's dangerous propensities or "had such knowledge of his [or her] canine's previous acts and character as would reasonably suggest to him [or her] the danger of permitting the animal to remain at large." *Lindsay v. Crohan,* 508 A.2d 674, 676 (R.I.1986) (citing *Malafronte v. Miloni,* 35 R.I. 225, 86 A. 146 (1913)). Such knowledge often was difficult to prove, so, in 1889, the Legislature enacted a strict liability statute making a "dog's owner or keeper absolutely liable without proof of prior knowledge of the dog's dangerous propensities upon a showing that either the person was injured while traveling along the highway or the injury occurred outside the boundaries of the dog owner's property." *Id.* "The statute plainly extends the liability of an owner beyond his liability at common law, which was only for habits of which he had reason to know." *Oldham v. Hussey,* 27 R.I. 366, 368, 62 A. 377, 378 (1905) (per curiam) (quoting *Kelly v. Alderson,* 19 R.I. 544, 545, 37 A. 12, 12 (1896)). That statute is now embodied in § 4–13–16.

■ However, § 4–13–17,[4] also enacted in 1896, does not extend the common law liability to dog bites that occur *within an enclosure;* instead, it merely "imposes

upon the keeper or harborer of a dog the same liability as theretofore imposed upon the owner, without, however, further defining that liability, and does not impose a liability for acts of the dog committed within the enclosure of the owner or keeper of such dog beyond his common-law liability; that is to say, except upon proof of knowledge of a vicious propensity." *Oldham,* 27 R.I. at 368, 62 A. at 378. "The first step in imposing liability under this section is to establish that the keeper or harborer knew of the dog's presence on the premises." *Montiero v. Silver Lake I, L.P.,* 813 A.2d 978, 981 (R.I.2003) (per curiam). "Second, a plaintiff must establish the requisite level of culpability on the part of the keeper or harborer." *Id.* The statute also imposes the same common law liability upon one who allows a person to harbor or keep a dog on his or her property, such as a landlord.

■ At the summary judgment hearing, plaintiff invited the trial justice to take judicial notice that pitbull terriers are inherently dangerous by virtue of their breed. That would have, in effect, created a new cause of action by imposing strict liability upon pitbull owners. The hearing justice properly declined to accept the invitation (*see Montiero,* 813 A.2d at 982), because the creation of a new cause of action should be left to the Legislature. *See Ferreira v. Strack,* 652 A.2d 965, 968 (R.I.1995). Although we recognize that some states and municipalities successfully regulate certain breeds of dogs such as pit bulls (*see Validity and Construction of Statute, Ordinance, or Regulation Applying to Specific Dog Breeds, such as "Pit Bulls" or "Bull Terriers",* 80 A.L.R.4th 70

---

4. General Laws 1956 § 4–13–17 provides:
 "Any person keeping or harboring in his or her house or on his or her lands any dog, or knowingly suffering this to be done by any

other person, shall be liable for all damages done by the dog in the same manner as if he or she were the owner."

(1990)), our Legislature has not, as yet, chosen to create "a species-specific standard of care." *Montiero*, 813 A.2d at 982.[5]

 Although this defendant may not be held strictly liable by virtue of the dogs' breed, he may be found negligent if he knew about the dogs' vicious propensities. The defendant admitted that he was "aware that some people breed pit bull terriers as attack dogs[,]" but he unequivocally denied having any knowledge of the previous dog-bite incident or that the dogs in question had "any vicious propensities whatsoever." However, we believe that a genuine issue of material fact existed about whether defendant had knowledge of the vicious propensities of at least one of the dogs.

It is undisputed that the dogs that attacked plaintiff were owned by Kathleen and that defendant was aware of their presence in the Miller Avenue apartment. The record reveals that plaintiff produced a police report indicating that a pitbull puppy bit a fourteen-year-old girl at Carl Hartfield's home on Miller Avenue three months previously. The record also indicates that Carl Hartfield, a.k.a. Carl Walker, was Kathleen's boyfriend. From this evidence the trial justice concluded that "[t]here was a bite by one of the tenant's three dogs, of some child prior to the incident that gave rise to this litigation" and, despite defendant's denials, we believe that the existence of the police report was enough evidence to raise a question of material fact about his knowledge of the vicious propensities of at least one of the dogs. Consequently, the question of defendant's knowledge should have been re-

solved by a finder of fact after a trial on the merits, and the motion for summary judgment should have been denied.

For the foregoing reasons, the plaintiff's appeal is sustained and the summary judgment is vacated. This case is remanded to the Superior Court for further proceedings in accordance with this decision.

Justice FLAHERTY did not participate.

---

5. In *Montiero*, although there was evidence that tended to show the existence of a dog on the premises, there was no evidence that defendant knew of that particular dog, nor was there any evidence that might establish defendant's knowledge of the dog's dangerous propensities. *Montiero v. Silver Lake I, L.P.*, 813 A.2d 978, 981 (R.I.2003) (per curiam).